**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WINNIE ODETTE DIGGS,<br><br>Plaintiff,<br><br>v.<br><br>POLICE CHIEF NEAL GALLUCCI and DMV DIRECTOR JEAN SHIOMOTO,<br><br>Defendants. | Case No.: 3:24-cv-00152-RBM-DDL<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS**<br><br>**(2) SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND 28 U.S.C. § 1915A(b)**<br><br>**(3) DISMISSING COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>**[Doc. 2]** |

On January 22, 2024, Plaintiff Winnie Odette Diggs ("Plaintiff") filed a Complaint for a Civil Case Alleging that Defendant Owes Plaintiff a Sum of Money (28 U.S.C. § 1332; Diversity of Citizenship) ("Complaint") against Defendants Police Chief Neal Gallucci ("Gullucci") of the Carlsbad Police Department and Department of Motor

1

Vehicles ("DMV") Director Jean Shiomoto ("Shiomoto") (collectively, "Defendants"). (Doc. 1.)

In her Complaint, Plaintiff alleges that she is a citizen of the State of Colorado and that Defendants are citizens of the State of California. (*Id.* at 3–4.) Regarding the amount-in-controversy, Plaintiff alleges the "loss of a program created through San Diego Small Business Administration (SBA) and National Institution of Health (NIH) … The program is worth billions; sponsored by SBIR and the STTR program, is in Jeopardy and its has franchising capabilities." (*Id.* at 4.) Later Plaintiff claims, "I have been targeted, I am tortured … I want to be compensated 1000.00 day for each day I have been targeted since 06/2016. With interest[.]" (*Id.* at 6.)

Plaintiff provides the following statement of claim:

> The Defendants are being charged for Torture, cruel and inhuman torture, prosecution [spanning] over seven years, tortured randomly and at defendant will. Plaintiff is wrongfully charged with crimes prosecuted and made to suffer by defendant's and defendant agents. By performing heinous acts against Plaintiff.

(*Id.* at 5.) Plaintiff appears to allege that she was escorted out of a library in Carlsbad by two armed police because she is African American. (*Id.* at 6.) Plaintiffs also seems to allege that she was wrongly accused of a DUI and forced to sleep in her Volvo. (*Id.*) Plaintiff alleges that she was driving a replacement car when she was pulled over and physically attacked before the officers towed the replacement car. (*Id.*) Plaintiff alleges her "privates were violated." (*Id.*) Plaintiff then alleges that various doctors and hospitals have failed to provide her medical treatment and instead wrote that she was having delusions, forced her to see a "[p]syc [sic] evaluation," and offered hallucinogens. (*Id.*)

Plaintiff attached to her Complaint her "original complaint" that was not accepted by the district court. (Doc. 1-2.) This original complaint was made against Shiomoto and the Legal Division of the DMV. (*Id.* at 2.) In this original complaint, Plaintiff alleges that she was falsely accused of a DUI. (*Id.* at 4.) Plaintiff then alleges that the DMV and the Carlsbad Police withheld crucial evidence, causing a guilty verdict. (*Id.*) Plaintiff also

2

alleges that the DMV applied sanctions, costs, and out-of-pocket expenses five months before trial. (*Id.*) Plaintiff alleges that her Volvo was disabled by local mechanics and that she was forced to sleep in the car while fighting for a fair trial. (*Id.*) Plaintiff alleges that her Apple air book was hacked, and her business plan was removed. (*Id.*) Plaintiff alleges that she replaced her Volvo with a Hyundai, but the DMV neglected to remove her suspension off her record and Carlsbad towed the car. (*Id.*) Plaintiff alleges that she was physically abused during the Christmas holiday in 2017 and taken to "Scripts in Encinitas" by paramedics, where she was threatened with a psychological evaluation and incarceration. (*Id.*)

In another attachment, Plaintiff alleges that she completed a business plan and received a grant from the National Institute of Health for her entity SAVE (Student and Social Advocates Voices for Education). (Doc. 1-3 at 1.) Plaintiff alleges that, while in San Diego, California, she was treated poorly and escorted out of the library by two armed police. (*Id.*) Plaintiff then alleges that she was followed and pulled over by police for having two license plates but was then arrested and charged with a DUI. (*Id.*) Plaintiff alleges that she was forced to "do sanctions" six months before her trial and that her computers were stolen or made to not work. (*Id.*) Plaintiff further alleges:

> I have [lesions] [sic] on my back a[l]ong [sic] with probes implanted in my skin. There is a chemical used on me when I am asleep or si[t]ting [sic], that burns the hair off of my legs. Torture is having the fumes get into my eyes. The Mayor in Pueblo told me that US home grown terrorist use nerve gas shock waves, WWI WWII electronic weapons during the attacks on me.

(*Id.*) Finally, Plaintiff make broad allegations of discrimination against African Americans in the United States. (*Id.* at 2–14.)

Plaintiff also filed an Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application"). (Doc. 2.) In her IFP Application, Plaintiff asserts that she earns $1,096.00 a month from employment, that she has a PNC debit card worth $12.00, and that she owns a car worth $300.00. (*Id.* at 1–3.) Plaintiff also asserts that she

3

has monthly expenses totaling $835.00. (*Id.* at 5.) Plaintiff contends that she has or will spend $50 in conjunction with this lawsuit. (*Id.*)

## I.     LEGAL STANDARD

A motion to proceed IFP presents two issues for the Court's consideration. First, the Court must determine whether an applicant properly shows an inability to pay the $405[1] civil filing fee required by this Court. *See* 28 U.S.C. §§ 1914(a), 1915(a). To that end, an applicant must provide the Court with a signed affidavit "that includes a statement of all assets[,] which shows inability to pay initial fees or give security." Civ. L.R. 3.2(a). Second, § 1915(e)(2)(B)(ii) requires the Court to evaluate whether an applicant's complaint sufficiently states a claim upon which relief may be granted. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim."). The Court addresses each issue in turn.

## II.     DISCUSSION

### A.     Plaintiff's IFP Application

An applicant need not be completely destitute to proceed IFP, but he must adequately prove his indigence. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948). An adequate affidavit should "allege[] that the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (citing *Adkins*, 335 U.S. at 339); *see also United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (an adequate affidavit should state supporting facts "with some particularity, definiteness and certainty") (citation omitted). No exact formula is "set forth by statute, regulation, or case law to determine when someone is poor enough to earn IFP

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a); United States Courts, District Court Miscellaneous Fee Schedule § 14 (effective Dec. 1, 2023), https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id*.

status." *Escobedo*, 787 F.3d at 1235.  Consequently, courts must evaluate IFP requests on a case-by-case basis.  *See id*. at 1235–36 (declining to implement a general benchmark of "twenty percent of monthly household income"); *see also Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991) (requiring that district courts evaluate indigency based upon available facts and by exercise of their "sound discretion"), *rev'd on other grounds*, 506 U.S. 194 (1993); *Venable v. Meyers*, 500 F.2d 1215, 1216 (9th Cir. 1974) ("The granting or denial of leave to proceed [IFP] in civil cases is within the sound discretion of the district court.").

In her IFP Application, Plaintiff asserts that she earns $1,096.00 a month from employment and that she has monthly expenses of $835.00, leaving $261.00 per month in potential savings.  (*Id.* at 1–2, 5.)  However, Plaintiff's Complaint also includes allegations suggesting that she has been homeless and living out of her car.  (*See e.g.*, Doc. 1 at 6.)  Therefore, the Court exercises its broad discretion and **<u>GRANTS</u>** Plaintiff's IFP Application.  *See Cal. Men's Colony v. Rowland*, 939 F.2d at 858 (requiring that district courts exercise their "sound discretion").

**B.     Screening Under 28 U.S.C. § 1915(e)**

As discussed above, every complaint filed pursuant to the IFP provisions of 28 U.S.C. § 1915 is subject to mandatory screening by the Court under Section 1915(e)(2)(B).  *Lopez*, 203 F.3d at 1127.  Under this provision, the Court must dismiss complaints that are (1) frivolous or malicious, (2) fail to state a claim on which relief may be granted, or (3) seek monetary relief from defendants who are immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B).

**1.     Subject Matter Jurisdiction—Diversity[2]**

"[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional

---

[2] While subject matter jurisdiction is not one of the screening mechanisms enumerated in 20 U.S.C. § 1915(e)(2)(B), "Federal Rule of Civil Procedure 12(h)(3) provides that a court

5

questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Pursuant to 28 U.S.C. §1332(a), federal courts have diversity jurisdiction when there is diversity of citizenship among the parties and when the amount-in-controversy exceeds $75,000. 28 U.S.C. § 1332(a); *see, e.g.*, *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67–68 (1996). To establish diversity jurisdiction, the citizenship of each plaintiff must be diverse from the citizenship of each defendant. *Caterpillar Inc.*, 519 U.S. at 68. "Where the plaintiff originally files in federal court, 'the amount in controversy is determined from the face of the pleadings.'" *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (quoting *Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000)). "The amount in controversy alleged by the proponent of federal jurisdiction—typically the plaintiff in the substantive dispute—controls so long as the claim is made in good faith." *Id.* (citing same).

Here, Plaintiff claims there is diversity of citizenship pursuant to 28 U.S.C. § 1332. (Doc. 1 at 1.) Plaintiff alleges that she is a citizen of Pueblo, Colorado and that Defendants are citizens of California. (*Id.* at 1–2.) However, Plaintiff also alleges that she is a "Citizen of This State" (Doc. 1-1 at 1). Because of this discrepancy, the Court is not certain that diversity of citizenship exists in the present case. Similarly, the Court is not persuaded that Plaintiff's allegations regarding the loss of her program "worth billions" and her desire to be compensated at $1000 per day since June 2016 were made in good faith. Therefore, the Court is not certain that Plaintiff has adequately alleged the amount in controversy.[3] *See Nation v. Samsung Elecs. Am., Inc.*, No. 2:23-CV-07413-JLS-E, 2023 WL 6879342, at *1

---

may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action, even on appeal." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

[3] Plaintiff also indicated on her Civil Cover Sheet that the U.S. Government was the plaintiff in this case, which is not accurate. (*See* Doc. 1-1 at 1.) Plaintiff Winnie Odette Diggs is the plaintiff in this case.

(C.D. Cal. Oct. 17, 2023) ("Here, the plaintiff's pro se complaint alleges, without any underlying factual support, that he is entitled to $100 trillion in damages for 'emotional' and 'physical' harms. This unsupported, fanciful allegation is not a good faith assertion of the amount in controversy that the Court must credit."). Based on the foregoing, Plaintiff's Complaint must be **DISMISSED**.

### 2. Frivolity

"The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted). "A complaint ... is frivolous where it lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). The definition of frivolousness "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). When determining whether to dismiss a complaint as "frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i), the court has "the unusual power to pierce the veil of the complaint's factual allegations," meaning that the court "is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton*, 504 U.S. at 32. Frivolous claims include "claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Id.* "An in forma pauperis complaint may not be dismissed ... simply because the court finds the plaintiff's allegations unlikely." *Id.* at 33. But "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* Frivolous litigation "is not limited to cases in which a legal claim is entirely without merit .... [A] person with a measured legitimate claim may cross the line into frivolous litigation by asserting facts that are grossly exaggerated or totally false." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1060–61 (9th Cir. 2007).

Here, the Court finds that Plaintiff's claims are fantastical, delusional, irrational, and incredible. *See Denton*, 504 U.S. at 32–33. Among other things, Plaintiff alleges that she

has lesions on her back with probes implanted in her skin. (Doc. 1-3 at 1.) Plaintiff also alleges that there is a chemical used on her while she is sleeping or sitting that burns the hair off of her legs. (*Id.*) Plaintiff alleges that the torture fumes get into her eyes and that the Mayor in Pueblo told her that terrorists use nerve gas shock waves and WWI/WWII electronic weapons during attacks on her. (*Id.*) There are also numerous allegations in her Complaint suggesting that Plaintiff experiences delusions and needs psychiatric treatment. (*See e.g.,* Doc. 1 at 6; Doc. 1-2 at 4.) The Court finds these claims are frivolous and call into question the legitimacy of Plaintiff's Complaint more broadly. Additionally, because Plaintiff's allegations are fanciful and delusional, "'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Sandoval v. Castillo*, No. 08cv1622-WQH-NLS, 2008 WL 4790521, at *1 (S.D. Cal. Nov. 3, 2008) (quoting *Franklin v. Murphy*, 745 F.2d 1221, 1228 n.9 (9th Cir. 1984)). Based on the foregoing, Plaintiff's Complaint must be **DISMISSED without leave to amend**.

### III.   CONCLUSION

Based on the foregoing, Plaintiff's IFP Application is **GRANTED**, but Plaintiff's Complaint is **DISMISSED without leave to amend**. *See Sandoval*, 2008 WL 4790521, at *1. The Clerk of the Court is **ORDERED** to close the file.

**IT IS SO ORDERED.**

DATE: October 2, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE